**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>**PORTLAND DUCK, LLC,**<br><br>Debtor. | Chapter 11<br><br>Case No. 25-10205 |

**MOTION OF DEBTOR FOR ENTRY OF AN ORDER ON AN INTERIM AND THEN FINAL BASIS: (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO § 364 OF THE BANKRUPTCY CODE; (II) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO § 363 OF THE BANKRUPTCY CODE; (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS; (IV) GRANTING ADEQUATE PROTECTION; (V) GRANTING REQUEST FOR EXPEDITED DETERMINATION AND REQUEST FOR LIMITATION OF NOTICE REGARDING THE FIRST HEARING THEREON; AND (VI) SCHEDULING A FINAL HEARING**

**This Motion includes a request for an expedited determination pursuant to Local Rule 9013-4 as to the request for interim relief only, with a proposed hearing on or before November 6, 2025. A statement of the facts and circumstances justifying expedited determination, as required by Local Rule 9013-4, is included herein.**

Portland Duck, LLC, the above-captioned debtor and debtor-in-possession (the "**Debtor**"), by and through undersigned proposed counsel, hereby moves this Court (the "**Motion**"), pursuant to §§ 105, 361, 362, 363, 364, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1, 4001-2, and 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of Maine (the "**Local Rules**"), providing the following relief on an interim basis substantially in the form filed contemporaneously herewith (the "**Interim Order**") and, subsequently, after notice and hearing, on a final basis (the "**Final Order**"):

(a)  authorizing and approving the Debtor, as borrower, to obtain postpetition financing from Heidi MacVittie (the "**DIP Lender**"), as lender, up to the maximum principal amount of **$50,000.00** (the "**DIP Loan**"), subject to the terms and conditions in the

1

    Interim Order and Final Order, and the timing of advances as set forth in the Budget (as defined below);

(b)  approving, pursuant to § 364 of the Bankruptcy Code, that the DIP Obligations (as defined below) shall have priority over any and all administrative expenses under the Bankruptcy Code and all administrative claims granted pursuant to an order of the Bankruptcy Court, and providing that, subject to the terms of the Interim Order and Final Order, the DIP Obligations shall be immediately secured by valid, binding, continuing, enforceable, fully perfected, and unavoidable second priority security interests in and liens upon the DIP Collateral (as defined below) (all junior to all perfected and unavoidable liens of NSB (defined below) on the DIP Collateral);

(c)  authorizing, pursuant to §§ 361(a) and 363(c) of the Bankruptcy Code, the Debtor to use cash collateral (as such term is defined in § 363(a) of the Bankruptcy Code) (as so defined, the "**Cash Collateral**"), including the proceeds of the DIP Loan, on the terms and conditions set forth in the Interim Order and Final Order, and the budget attached as **Exhibit A** to the Interim Order (such budget, as may be modified or continued from time to time in accordance with the Interim Order and Final Order, the "**Budget**"), including to pay certain payroll and insurance obligations that may constitute prepetition liabilities (as reflected in the Budget);

(d)  authorizing the Debtor to grant adequate protection to the Lenders (as defined below) as provided in the Interim Order and Final Order; and

(e)  scheduling a final hearing (the "**Final Hearing**") to consider entry of the Final Order regarding the relief sought herein and setting related deadlines.

In support of this Motion, the Debtor states as follows:

## JURISDICTION AND VENUE

1.  The United States District Court for the District of Maine (the "**District Court**") has original, but not exclusive, jurisdiction over the Debtor's chapter 11 case pursuant to 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157 and Rule 83.6 of the District Court's local rules, the District Court has authority to refer and has referred this proceeding to this Court.

2.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has constitutional authority to enter final judgment in this proceeding.

3.  Venue is proper in this district pursuant to 28 U.S.C. § 1408, and venue over this proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

## CASH COLLATERAL AND BORROWING DISCLOSURES

4. Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the Debtor makes the following disclosures regarding the relief sought in this Motion:

| Category | Disclosure |
|---|---|
| Borrower<br>*Bankruptcy Rule 4001(c)(1)(B)* | Portland Duck, LLC |
| Guarantor<br>*Bankruptcy Rule 4001(c)(1)(B)* | None |
| DIP Lender<br>*Bankruptcy Rule 4001(c)(1)(B)* | Heidi MacVittie (insider, creditor, and holder of 20% of membership interests in the Debtor). |
| DIP Loan Commitment<br>*Bankruptcy Rule 4001(c)(1)(B)* | The DIP Loan shall be available in the maximum principal amount of **$50,000**, with the DIP Lender making advances under the DIP Loan after the Petition Date generally in accordance with the Budget. All obligations arising under the DIP Loan are referred to herein as the "**DIP Obligations**." |
| Term<br>*Bankruptcy Rule 4001(b)(l)(B)(iii), 4001(c)(1)(B)* | The DIP Loan shall mature and become payable in full on December 31, 2026, unless extended by the DIP Lender in writing. |
| Conditions of Borrowing<br>*Bankruptcy Rule 4001(c)(1)(B)* | The DIP Loan shall be conditioned upon entry of an order by the Bankruptcy Court approving the terms of the DIP Loan through the Interim Order. |
| Interest Rate<br>*Bankruptcy Rule 4001(c)(1)(B)* | The interest rate shall be 5.0% per annum on amounts actually advanced. |
| Expenses and Fees<br>*Bankruptcy Rule 4001(c)(1)(B)* | The DIP Lender shall not be entitled to attorneys' fees and costs. |
| Budget<br>*Bankruptcy Rule 4001(c)(1)(B)* | See **Exhibit A** to Interim Order. |
| DIP Loan Liens and DIP Collateral<br>*Bankruptcy Rule 4001(c)(l)(B)(i)* | Subject to the Carve Out, the DIP Obligations shall be secured by second priority liens (the "**DIP Liens**") on all of the Debtor's pre-petition and post-petition assets other than Avoidance Actions[1] and the proceeds thereof (collectively, the "**DIP Collateral**"). Upon entry of the Interim Order, the DIP Liens shall be valid, binding, enforceable, and fully perfected liens on the DIP Collateral securing the DIP Obligations. |

---

[1] As used herein, "**Avoidance Actions**" shall mean the claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code and under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and similar statutes or common law.

| | |
|---|---|
| | The DIP Liens shall be immediately junior to all perfected and unavoidable liens of Norway Savings Bank ("**NSB**") on the DIP Collateral.<br><br>In addition, subject to the Carve Out, all DIP Obligations shall be treated as an allowed super-priority administrative expense claim under § 364(c)(1) of the Code (the "**Superpriority DIP Claim**"). |
| Name of each entity with a potential interest in Cash Collateral<br>*Bankruptcy Rule 4001(b)(1)(B)(i)* | NSB holds a first priority security interest in Cash Collateral and the DIP Collateral pursuant to a UCC Financing Statement filed on May 2, 2024.<br><br>The U.S. Small Business Administration ("**SBA**") may assert an interest in Cash Collateral and the DIP Collateral, junior in priority to NSB (based on SBA's later-filed UCC Financing Statement). The Debtor takes the position that based on the SBA's junior priority liens and the value of the DIP Collateral, the SBA's security interest in the DIP Collateral was valued at $0.00 as of the Petition Date, and, therefore, the SBA is not a secured creditor for purposes of this Motion and is not entitled to adequate protection (because it cannot suffer a diminution in value from a $0.00 starting position). However, the Debtor grants the SBA adequate protection (to the extent required) in this Motion, with the Debtor and SBA reserving all rights.<br><br>The DIP Lender, NSB, and SBA are referred to herein as the "**Lenders**." |
| Purpose for use of Cash Collateral and the DIP Loan<br>*Bankruptcy Rule 4001(b)(1)(B)(iii)* | The Debtor seeks immediate entry of the Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2. The Debtor has an immediate need for use of the Cash Collateral in the amount and in the manner set forth in the Budget. |
| Modification of Automatic Stay<br>*Bankruptcy Rule 4001(b)(1)(B)(iii)* | N/A |
| Material terms, including duration of the use of Cash Collateral and the proceeds of the DIP Loan<br>*Bankruptcy Rule 4001(b)(1)(B)(iii)* | The Debtor shall be authorized to use the advances under the DIP Loan and Cash Collateral in accordance with the initial Budget attached to the Interim Order as **Exhibit A** and subsequent Budgets to be filed at later dates according to Orders of this Court. |
| Liens, cash payments, or other adequate protection to be provided to each entity with an interest in Cash Collateral<br>*Bankruptcy Rule 4001(b)(1)(B)(iii)* | Pursuant to the Interim Order, the Lenders shall be provided with adequate protection to the extent of any diminution after the Petition Date in their respective interest in Cash Collateral as of the Petition Date, including the following:<br><br>(i) Through an increase in Cash Collateral from the Petition |

4

| | |
|---|---|
| | Date during the relevant time period, as reflected in the Budget;<br><br>(ii) Through the Adequate Protection Liens and Continuing Liens (as defined below); and<br><br>(iii) To the extent the Adequate Protection Liens and Continuing Liens are insufficient to cover the Adequate Protection Obligations (as defined below) in their entirety, the remaining, unsatisfied Adequate Protection Obligations due to the Lenders shall constitute allowed administrative claims against the Debtor to the extent provided by § 507(b) of the Bankruptcy Code. |
| Carve Out<br>*Bankruptcy Rule 4001(b)(1)(B)(iii)* | The DIP Liens and the DIP Obligations shall be subject and subordinate to allowed professional fees incurred by proposed counsel for the Debtor (Bernstein Shur Sawyer & Nelson, PA) up to the maximum amount of **$25,000.00** (the "**Professional**") (the items described above shall be referred to herein collectively as the "**Carve Out**").  Further, in accordance with the Carve Out, once a payment is disbursed to the Professional under the Budget (the "**Budgeted Professional Fee Payments**"), such Budgeted Professional Fee Payment shall constitute a dollar for dollar payment toward satisfying the Carve Out and shall no longer be subject to any liens, claims, or interests.  For avoidance of doubt, nothing herein shall constitute a priming lien as to NSB's liens on the DIP Collateral as of the Petition Date. |
| Events of Default<br>*(Bankruptcy Rule 4001(b)(1)(B)(iii))* | N/A |
| Amount of debt encumbering the Cash Collateral as of Petition Date | **NSB**: $200,000<br>**SBA**: $86,000 |
| Reservation of Rights<br>*(Bankruptcy Rule 4001(b)(1)(B)(iii))* | Except as provided in the Interim Order or Final Order, neither the Debtor nor the Lenders waive any of their rights under the Bankruptcy Code, any applicable law, or the relevant transaction documents. |
| Waivers/Additional Terms | **All parties are advised that the Final Order may contain stipulations and waivers, including as to surcharge, marshalling, and equities of the case doctrine.** |

## General Background

5.      On October 24, 2025 (the "**Petition Date**"), the Debtor commenced its chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this

5

Court.

6. The Debtor continues to operate its business and manage its property as debtor and debtor-in-possession. To date, no operating trustee, examiner, or statutory committee has been appointed in the case by the Office of the United States Trustee.

7. The Debtor is a Maine-based corporation that operates a duck boat business, including tours, in Portland, Maine, under the Quack N' Cruise name, and in New Orleans, Louisiana. The Debtor owns one duck boat used in Portland (which operating season recently ended), while the Debtor leases two duck boats for use in New Orleans (although neither is presently operational due to significant mechanical and structural issues).

### Summary of Interests in Cash Collateral

8. **NSB**. In May 2024, NSB loaned to the Debtor the sum of up to $200,000, secured by a first position security interest in all business assets of the Debtor, including a Preferred Ship's Mortgage on the Bufflehead Amphibious Vessel. NSB filed UCC Financing Statement No. 0234 on May 2, 2024, asserting a security interest in all business assets of the Debtor.

9. **SBA**. In June 2024, the Debtor obtained an EIDL loan from the SBA, and on June 5, 2024, the SBA filed UCC Financing Statement No. 0133 asserting a security interest in all business assets of the Debtor.

### The Debtor's Need for the Use of Cash Collateral and Post-Petition Borrowing

10. As reflected in the Budget, the Debtor has an immediate and critical need for the use of Cash Collateral in the earliest days of the chapter 11 case and beyond. Access to the use of Cash Collateral will allow the Debtor to fund necessary and imminent expenses required for the Debtor to maintain operations, as well as for the Debtor to fund other necessary expenses in chapter 11.

11. The Budget includes certain payments for payroll and insurance in the early weeks

6

of this case. The Debtor does not believe that any portion of payroll constitutes a prepetition obligation, but the Debtor, out of an abundance of caution, seeks authority to pay payroll and related tax obligations in the ordinary course in accordance with the Budget, including to the extent a portion of such payments constitute a prepetition obligation. Further, the Budget includes various insurance payments, some of which may constitute prepetition obligations of the Debtor. The Debtor seeks authority to fund those insurance premiums in the ordinary course, in accordance with the Budget, and in the ordinary course, including to the extent some or all of such obligations constitute prepetition liabilities.

## RELIEF REQUESTED

12. The Debtor requests entry of the Interim Order and, after notice and hearing, the Final Order, granting the relief sought herein.

## BASIS FOR RELIEF

**I.    This Court Should Authorize the Debtor to Obtain Postpetition Financing and Grant the DIP Liens and other Rights and Privileges to the DIP Lender.**

13. Bankruptcy courts have authority to permit debtors-in-possession to obtain postpetition financing pursuant to § 364 of the Bankruptcy Code. Of relevance here, § 364(c) provides that if the debtor-in-possession "is unable to obtain unsecured credit allowable under section 503(b)(1) … as an administrative expense," the court may authorize

> the obtaining of credit or the incurring of debt—
>
> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c). In evaluating proposed postpetition financing under § 364 of the Bankruptcy

7

Code, courts perform a qualitative analysis and often consider various factors, including whether:

(a) unencumbered credit or alternative financing without superpriority status is available to the debtor;

(b) the credit transactions are necessary to preserve assets of the estate;

(c) the terms of the credit agreement are fair, reasonable, and adequate;

(d) the proposed financing agreement was negotiated in good faith and at arm's-length and entry thereto is an exercise of sound and reasonable business judgment and in the best interest of the debtors' estate and their creditors; and

(e) the proposed financing agreement adequately protects prepetition secured creditors.

See, e.g., In re Los Angeles Dodgers LLC, 457 B.R. 308, 312 (Bankr. D. Del. 2011); In re Aqua Assoc., 123 B.R. 192 (Bankr. E.D. Pa. 1991).

14. The Debtor submits that it satisfies the standards required to access postpetition financing under §§ 364(c) and 364(d) of the Bankruptcy Code.

15. First, given its current financial condition, financing arrangements, and debt and capital structure (including the prepetition liens held by NSB and SBA), the Debtor does not believe it could identify actionable alternative sources of financing other than that offered by the DIP Lender on terms more favorable than those under the DIP Loan, and the Debtor is not able to obtain unsecured credit allowable as an administrative expense under § 503(b)(1) of the Bankruptcy Code. Second, as a debtor-in-possession, the Debtor has a fiduciary duty to protect and maximize the value of its estate. See In re Mushroom Transp. Co., 382 F.3d 325, 339 (3d Cir. 2004). The DIP Loan, if approved, will provide working capital critical to fund the Debtor's day-to-day operations, expenses, and the chapter 11 case, which will provide a path for the Debtor to execute its restructuring strategy. Third, in considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the

debtor and the proposed lender. Here, the Debtor submits that the terms of the DIP Loan (including the DIP Collateral and interest rate) are fair, appropriate, reasonable, and in the best interests of the Debtor, its estate, and its creditors. Fourth, a debtor's decision to enter into a postpetition lending facility under § 364 of the Bankruptcy Code is governed by the business judgment standard. See In re Trans World Airlines, Inc., 163 B.R. 964, 974 (Bankr. D. Del 1994) (noting that the interim loan, receivable facility, and asset based facility were approved because they "reflect[ed] sound and prudent business judgment [were] reasonable under the circumstances and in the best interests of TWA and its creditors"). Here, the Debtor submits that entry into the DIP Loan is consistent with the exercise of the Debtor's reasonable business judgment, including the Debtor's careful analysis regarding its liquidity needs during the case and available sources of cash.

**II.     This Court Should Authorize the Debtor to Use Cash Collateral and Grant Adequate Protection and Related Rights to the Lenders.**

16.     Section 541(a) provides that the "commencement of a case . . . creates an estate" that is comprised of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case" and "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a). Section 362(a) provides that "a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

17.     Section 363(a) of the Bankruptcy Code provides the following definition of cash collateral:

> . . . cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use

9

or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

18. Section 363(c)(2) of the Bankruptcy Code provides that a debtor may use cash collateral as long as: (a) each entity that has an interest in such cash collateral consents; or (b) the bankruptcy court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of the section. See 11 U.S.C. § 363(c)(2). Section 363(e) provides, in turn, that "on request of an entity that has an interest in property . . . proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

19. Section 362(d)(1) of the Bankruptcy Code provides for adequate protection in property due to the imposition of the automatic stay. See 11 U.S.C. § 362(d)(1). Although § 361 provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts must decide what constitutes sufficient adequate protection on a case-by-case basis. See Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.), 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("[T]he determination of adequate protection is a fact-specific inquiry . . . left to the vagaries of each case . . . .") (citation and quotation omitted).

A. **Adequate Protection Obligations and Liens, Superpriority Claims, and Other Protections**

20. As adequate protection for the Debtor's use of Cash Collateral, the Lenders shall be granted, solely to the extent of any diminution in the value of its respective interests in Cash Collateral or other property of the estate from and after the Petition Date (such diminution in value

10

after the Petition Date for each's interests, the "**Adequate Protection Obligations**"), liens on all assets of the Debtor and its estate (other than the proceeds of Avoidance Actions), subject (as applicable) to the Carve Out (the "**Adequate Protection Liens**").

21.  In addition to the Adequate Protection Liens, pursuant to § 552 of the Bankruptcy Code, the Lenders shall continue to hold liens, rights as assignee, and/or security interests in any and all property of the Debtor to the same extent and validity, and in the same priority, as the Lenders held liens, rights as assignee, and/or security interests in the Debtor's assets at the Petition Date (the "**Continuing Liens**").

22.  In addition, as further adequate protection, to the extent the Adequate Protection Liens are insufficient to cover the Adequate Protection Obligations in their entirety, the remaining, unsatisfied Adequate Protection Obligations shall constitute allowed administrative claims against the Debtor to the extent provided by § 507(b) of the Bankruptcy Code, subject to the Carve Out.

**EXPEDITED DETERMINATION OF INTERIM APPROVAL**

23.  Bankruptcy Rules 4001(b)(2) and 4001(c)(2) provide that a final hearing on a motion to use cash collateral or obtain credit, respectively, may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the court may conduct a preliminary, expedited hearing on the motion and authorize the use of cash collateral and the obtaining of credit on an interim basis "to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2), (c)(2). Pursuant to Local Rule 9013-4, the Debtor seeks expedited determination for use of Cash Collateral on an interim basis, as it has an immediate and critical need for the use of Cash Collateral in the earliest days of the chapter 11 case and beyond.

24.  The Debtor is unable to continue its business operations without the ability to use Cash Collateral and access the DIP Loan in accordance with the Budget and will suffer immediate

11

and irreparable harm to the detriment of all creditors and other parties in interest absent such relief. The Debtor, therefore, submits that expedited determination of the interim relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor, its estate, and its creditors, including by disrupting the Debtor's ability to pay necessary expenses incurred in connection with administering the chapter 11 case (as set forth in the Budget, including payroll and insurance obligations due in the next 7-10 days). **The Debtor, therefore, requests an expedited hearing on the interim relief sought in this Motion on or before November 6, 2025**.

### REQUEST FOR FINAL HEARING AND RELATED DEADLINES

25. Pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2), the Debtor requests that this Court set a date for a Final Hearing on the Motion that is as soon as practicable, but in no event later than fourteen (14) days following the Petition Date, and fix related deadlines before the Final Hearing, as set forth in the Interim Order.

### BANKRUPTCY RULE 6003 HAS BEEN SATISFIED AND BANKRUPTCY RULE 6004 SHOULD BE WAIVED

26. Certain aspects of the relief requested in the Motion may, if granted, be subject to Bankruptcy Rule 6003. Pursuant to Bankruptcy Rule 6003, a court may grant such relief if it is necessary to avoid immediate and irreparable harm. The Debtor submits that the facts set forth herein demonstrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtor, and, thus, Bankruptcy Rule 6003 has been satisfied. Additionally, to the extent that any aspect of the relief sought herein constitutes a use of property under § 363(b) of the Bankruptcy Code, the Debtor seeks a waiver of the 14-day stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtor seeks in this Motion is immediately necessary in order for the Debtor to be able to continue to operate its business and preserve the value of its estate. Accordingly, the Debtor submits that a waiver of the 14-day stay imposed by Bankruptcy Rule

6004(h) is appropriate.

## LIMITED NOTICE

27. The Debtor requests limited notice and proposes serving notice of this Motion and of any expedited hearing thereon via e-mail, telephone, or overnight mail, if necessary, on the following parties: (a) the United States Trustee; (b) the Debtor's secured creditors or, if applicable, to counsel representing them; (c) the top twenty (20) non-insider unsecured creditors of the Debtor or, if applicable, to counsel representing such holders; (d) applicable federal and state taxing authorities; and (e) any attorney of record or party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the circumstances of the Debtor's chapter 11 case and the nature of the relief sought herein, the Debtor submits that no further notice of this Motion or of an expedited hearing thereon is required. The Debtor has made and will make a good faith effort to advise all affected parties of the time and date of the hearing.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter the Interim Order and then the Final Order, granting the relief requested in the Motion and such other and further relief as this Court deems fair and appropriate.

Dated: October 29, 2025

Respectfully submitted,
**BERNSTEIN, SHUR, SAWYER & NELSON, P.A.**

*/s/ Adam R. Prescott*
Adam R. Prescott, Esq.
100 Middle Street
PO Box 9729
Portland, Maine 04104
Telephone: (207) 774-1200
aprescott@bernsteinshur.com

*Proposed Counsel to the Debtor and Debtor in Possession*

13