**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PORTLAND DUCK, LLC,** | **Case No. 25-10205** |
| **Debtor.** | |

**INTERIM ORDER: (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION
FINANCING PURSUANT TO § 364 OF THE BANKRUPTCY CODE; (II)
AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO § 363
OF THE BANKRUPTCY CODE; (III) GRANTING LIENS AND SUPER-PRIORITY
CLAIMS; (IV) GRANTING ADEQUATE PROTECTION;
AND (V) SCHEDULING A FINAL HEARING**

This matter is before this Court upon the above-referenced motion [Dkt. No. ____] (the

"**Motion**") filed by the Debtor[1] requesting entry of an Order (this "**Interim Order**") authorizing

the relief set forth in the Motion; and due and sufficient notice under the circumstances of the

Motion and the interim hearing on the Motion (the "**Interim Hearing**") having been provided by

the Debtor; and the Interim Hearing having been held; and after due deliberation and consideration

and good and sufficient cause appearing therefor;

   **IT IS HEREBY FOUND THAT**:

   A.      On the Petition Date, the Debtor commenced this chapter 11 case in the Bankruptcy

Court.

   B.      The Debtor is continuing to manage its properties as debtor in possession.

   C.      The Bankruptcy Court has subject matter jurisdiction to consider this matter

pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue

is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Capitalized terms used, but not otherwise defined in this Interim Order, shall have the meaning ascribed to such
terms in the Motion.

D.       The access of the Debtor to sufficient working capital and liquidity through the incurrence of new indebtedness from borrowed money and other financial accommodations and use of such funds is vital to the preservation and maintenance of the going concern value of the Debtor and to the success of this case.

E.       Failure to grant the relief in this Interim Order would result in immediate and irreparable harm to the Debtor, its estate, and its creditors.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**:

1.       **Disposition**.  The Motion is **GRANTED** on an interim basis as set forth in this Interim Order.

2.       **Cash Collateral and Budget**.  Subject to the terms of this Interim Order, the Debtor is authorized to use Cash Collateral (including proceeds of the DIP Loan) in accordance with and to the extent set forth in the Budget (attached hereto as **Exhibit A**) on an interim basis, with recognition that the timing of revenue and expenses may be different (including falling in different weeks) than as projected in the Budget.  The authorization herein includes approval for the Debtor to pay prepetition payroll and insurance obligations in accordance with the Budget (as set forth in those specific line-items).

3.       **Immediate Effect**. Notwithstanding any provision of the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules to the contrary, this Interim Order shall take effect immediately upon entry on the docket, and shall remain in effect until such time as otherwise ordered by this Court pursuant to the procedures set forth herein (with such period from the Petition Date through the end of the effectiveness of this Interim Order being referred to herein as the "**Interim Cash Collateral Period**").

4.       **Permitted Variance**.  The Debtor's use of Cash Collateral, including the proceeds

advanced by the DIP Lender under the DIP Loan, during the Interim Cash Collateral Period shall

be limited to One Hundred Ten Percent (110%) of the aggregate expenditures as set forth in the

Budget (including any subsequent or modified Budget), with recognition that the timing of revenue

and expenses may be different than as projected.

5.      **Authorization to Borrow**.  Upon entry of this Interim Order, the Debtor is deemed

to have, and is authorized and empowered to borrow on an interim basis from the DIP Lender

under the DIP Loan, up to the amounts set forth in the applicable weeks in the Budget constituting

the Interim Cash Collateral Period, subject to the terms and conditions of this Interim Order and

the DIP Loan Documents.  In addition, subject to the Carve Out, all DIP Obligations incurred

under this Interim Order shall be treated as an allowed superpriority administrative expense claim

under § 364(c)(1) of the Code (the "**Superpriority DIP Claim**").

6.      **DIP Liens**.  Subject to the Carve Out, all obligations under the DIP Loan (the "**DIP**

**Obligations**") shall be secured by second priority liens (the "**DIP Liens**") on all of the Debtor's

assets other than Avoidance Actions and the proceeds thereof (collectively, the "**DIP Collateral**").

Upon entry of the Interim Order, the DIP Liens shall be valid, binding, enforceable, and fully

perfected liens on the DIP Collateral.  The DIP Liens shall be immediately junior to all perfected

and unavoidable liens held by NSB as of the Petition Date in the DIP Collateral.

a.      **Reporting**. On or before the Thursday of each week, the Debtor shall

deliver to the Lenders and Subchapter V Trustee a line-by-line variance report that compares actual

cash receipts and disbursements of the Debtor with corresponding amounts provided for in the

Budget in the prior week.

b.      **Adequate Protection**.  Pursuant to this Interim Order, the Lenders shall be

provided with adequate protection to the extent of any diminution in the value of their respective

interests in Cash Collateral or other property of the estate from and after the Petition Date as a result of the use of Cash Collateral after the Petition Date or the newly incurred postpetition obligations under the DIP Loan (such established diminution in value after the Petition Date for each's interests, the "**Adequate Protection Obligations**"), liens on all assets of the Debtor and its estate (other than the proceeds of Avoidance Actions), all which shall exist in the same order of priority that existed as of the Petition Date between the Lenders (but all junior to the DIP Liens and the Carve Out)  (the "**Adequate Protection Liens**").

c.      **Continuing Liens**.  In addition to the Adequate Protection Liens to the Lenders, pursuant to § 552 of the Bankruptcy Code, the Lenders shall continue to hold liens, rights as assignee, and/or security interests in any and all proceeds, products, offspring, or profits acquired by the Debtor after the Petition Date to the same extent and validity, and in the same priority, as the Lenders held liens, rights as assignee, and/or security interests in the Debtor's assets as of the Petition Date (the "**Continuing Liens**").

d.      **Automatic Perfection**.  The DIP Liens, Adequate Protection Liens, and Continuing Liens shall be valid, binding, enforceable, and fully perfected without the necessity of the execution, filing, or recording of security agreements, pledge agreements, financing statements, or other agreements.

e.      **Binding Nature of Adequate Protection Liens**.  No obligation, payment, transfer or grant of security under this Interim Order shall be: (a) stayed, restrained, voidable, avoidable or recoverable under any section of the Bankruptcy Code or any other applicable law; or (b) subject to avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross-claim, defense or any other challenge under any section of the Bankruptcy Code or any other applicable law by any person or

entity.

7.      **Carve Out**. The DIP Liens and the DIP Obligations shall be subject and subordinate to allowed professional fees incurred by proposed counsel for the Debtor (Bernstein Shur Sawyer & Nelson, PA) up to the maximum amount of **$25,000.00** (the "**Professional**") (the items described above shall be referred to herein collectively as the "**Carve Out**").  Further, in accordance with the Carve Out, once a payment is disbursed to the Professional under the Budget (the "**Budgeted Professional Fee Payments**"), such Budgeted Professional Fee Payment shall constitute a dollar for dollar payment toward satisfying the Carve Out and shall no longer be subject to any liens, claims, or interests.  For avoidance of doubt, nothing herein shall constitute a priming lien as to NSB's liens on the DIP Collateral as of the Petition Date.

8.      **Survival**. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any orders which may be entered: (i) confirming any chapter 11 plan in the chapter 11 case; (ii) converting the chapter 11 case to a case under chapter 7 of the Bankruptcy Code; (iii) to the extent authorized by applicable law, dismissing the chapter 11 case; (iv) withdrawing of the reference of the chapter 11 case from the Court; or (v) providing for abstention from handling or retaining of jurisdiction of the chapter 11 case in the Court.  The terms and provisions of this Interim Order shall: (a) continue in these or any other superseding cases under the Bankruptcy Code; (b) be valid and binding on all parties in interest, including, without limitation, any official committee appointed in the case, any chapter 11 trustee, examiner, or chapter 7 trustee, or other fiduciary appointed in the chapter 11 case or any successor case and their respective successors and assigns; and (c) continue, notwithstanding any dismissal of the Debtor's bankruptcy case.

9.      **Adequate Notice**. The Debtor provided adequate notice of the Motion to parties in

interest, as reflected in the certificate of service accompanying the Motion, which notice this Court finds to be appropriate and adequate under Bankruptcy Rules 2002 and 4001.

10.     **<u>Final Hearing and Related Deadlines</u>**.

a.     The Final Hearing on the Motion shall take place before this Court on **November __, 2025, at __:__ _.m.**

b.     The Debtor shall file and serve a proposed Final Order and revised Budget, if applicable, **on or before November __, 2025**.

c.     Objections, if any, to the relief requested in the Motion being granted on a final basis shall be filed with this Court and served upon on all parties appearing in the case, and on the Office of the United States Trustee, **on or before November __, 2025**.

11.     **<u>Immediate Effect</u>**. This Interim Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable effective immediately.


Date: _____                    _____
                                             Michael A. Fagone
                                             United States Bankruptcy Judge
                                             District of Maine

**Exhibit A**
**Interim Budget**

| | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 10/31/2025 | 11/7/2025 | 11/14/2025 | 11/21/2025 | 11/28/2025 | 12/5/2025 | 12/12/2025 | 12/19/2025 | 12/26/2025 | 1/2/2026 | 1/9/2026 |
| | | | | | | | | | | | |
| **Cash Receipts** | | | | | | | | | | | |
| STARTING CASH | $2,100 | $2,100 | $2,997 | $2,304 | $2,264 | $3,696 | $2,935 | $4,685 | $3,930 | $5,640 | $2,474 |
| DIP LOAN ADVANCE | $0 | $12,500 | $5,000 | $5,000 | $10,000 | $0 | $7,500 | $0 | $2,500 | $7,500 | $0 |
| | | | | | | | | | | | |
| **Cash Disbursements** | | | | | | | | | | | |
| **Portland Expenses** | | | | | | | | | | | |
| Operational Manager Payroll | | $2,077 | $1,038 | | | | | | | | |
| Employer Portion of Payroll Taxes | | $160 | $80 | | | | | | | | |
| Cost of Maintenance Supplies | | | $1,000 | | $1,000 | $500 | $500 | $500 | $500 | $500 | $500 |
| Vehicle Fuel | | | $250 | | $250 | $250 | $250 | $250 | $250 | $250 | $250 |
| Business Insurance | | $2,748 | | | | | | | | | |
| First Insurance (Dry Dock estimate) | | $2,113 | | | $2,113 | | | | | $2,113 | |
| National Specialty Insurance (Road Liability) | | $639 | | | $639 | | | | | $639 | |
| Subchapter V Trustee | | | | | $1,000 | | | | | $1,000 | |
| Casco Bay Duck Boat Storage | | $1,050 | | | $1,050 | | | | | $1,050 | |
| Google Domain/Workspace | | | | $40 | | | | | $40 | | |
| Quick Books Online | | $115 | | | $115 | | | | | $115 | |
| Smart Waiver (Releases) | | | $5 | | | | | $5 | | | |
| Webnet Solutions | | | $10 | | | $10 | | | | | $10 |
| Gusto (Payroll Company) | | $300 | $150 | | | | | | | | |
| Fleetio | | | | | | | | | | | |
| SeaTow Service | | | | | | | | | | | |
| Bernstein Shur | | | | $5,000 | | | $5,000 | | | $5,000 | |
| SUBTOTAL PORTLAND EXPENDITURES | $0 | $9,202 | $2,533 | $5,040 | $6,167 | $760 | $5,750 | $755 | $790 | $10,667 | $760 |
| | | | | | | | | | | | |
| **New Orleans Expenses** | | | | | | | | | | | |
| Office Maintenance Facility | | | $3,160 | | | | | | | | |
| Staff Housing (Rent) | | $2,401 | | | $2,401 | | | | | | |
| SUBTOTAL NEW ORLEANS EXPENDITURES | $0 | $2,401 | $3,160 | $0 | $2,401 | $0 | $0 | $0 | $0 | $0 | $0 |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| **Total Expenditures** | $0 | $11,603 | $5,693 | $5,040 | $8,568 | $760 | $5,750 | $755 | $790 | $10,667 | $760 |
| Ending Cash | $2,100 | $2,997 | $2,304 | $2,264 | $3,696 | $2,935 | $4,685 | $3,930 | $5,640 | $2,474 | $1,713 |
| DIP LOAN BALANCE | $0 | $12,500 | $17,500 | $22,500 | $32,500 | $32,500 | $40,000 | $40,000 | $42,500 | $50,000 | $50,000 |